**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 0 4 2024

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

TRAVON S. BREWER,                                                    **PLAINTIFF**

Case No. 2:24-cv-43-BSM

MICHAEL T. TALLEY, and                                         **DEFENDANTS**
CITY OF JONESBORO, ARKANSAS.

---

### COMPLAINT WITH JURY DEMAND

---

**AND NOW** comes the Plaintiff, TRAVON S. BREWER, by and through his counsel, DEVON M. JACOB, ESQUIRE, of the law firm of JACOB LITIGATION, INC., and VEN JOHNSON, ESQUIRE, of VEN JOHNSON LAW, PLC, to aver as follows:

### I.      JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1983.

2.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

3.      Pursuant to 28 U.S.C. § 1391, venue is proper in this Court, because the Defendants are located within the Eastern District of Arkansas, and the cause of action arose in Helena, Phillips County, Arkansas.

### II.      IDENTIFICATION OF PARTIES

4.      Plaintiff, TRAVON S. BREWER, is an adult male, who during all relevant times, was a resident of Helena, Phillips County, Arkansas.

5.      Defendant, MICHAEL T. TALLEY, is an adult male, who during all relevant times was employed by the Jonesboro Police Department, as a sworn police officer. All of TALLEY'S actions or inactions were taken under color of state law. He is sued in his individual capacity.

1

This case assigned to District Judge Miller
and to Magistrate Judge Kearney

6.      Defendant, CITY OF JONESBORO, ARKANSAS, owns and operates the Jonesboro Police Department. The CITY'S principal place of business is 300 S. Church Street, Jonesboro, Arkansas 72401.  The Jonesboro Police Department's principal place of business is 1001 South Caraway Road, Jonesboro, Arkansas, 72401.

### III.    MATERIAL FACTS

7.      The CITY OF JONESBORO, ARKANSAS ("CITY"), owns and operates the Jonesboro Police Department.

8.      On Thursday, March 3, 2022, MICHAEL TALLEY ("TALLEY") was a sworn police officer, employed by the Jonesboro Police Department.

### A. TALLEY Uses Deadly Force Against BREWER

9.      On Thursday, March 3, 2022, at around 12:00 PM, Plaintiff, TRAVON S. BREWER ("BREWER"), was walking on Monroe Street in Helena, Phillips County, Arkansas.

10.     BREWER was carrying a firearm in his right hand in plain view.

11.     The firearm was not concealed in any manner.

12.     At all times, the firearm was pointed at the ground.

13.     BREWER had a backpack with him that contained his jacket.

14.     BREWER had one strap of the backpack on his left shoulder.

15.     Two vehicles turned onto Monroe Street driving recklessly and at a high rate of speed.

16.     To the best of BREWER'S recollection, one vehicle was a car, and the other vehicle was a pickup truck.

17.     The car appeared to be driving on the grass, and the pickup truck was driving on the roadway.

2

18.     The two vehicles sped towards BREWER in this reckless manner.

19.     To the best of BREWER'S recollection, both vehicles had tinted windows.

20.     BREWER had never seen the vehicles before.

21.     Since the vehicles were speeding towards BREWER in this reckless manner for no apparent reason, BREWER reasonably assumed that the occupants of the vehicles intended to cause him physical harm.

22.     BREWER became immediately fearful for his personal safety.

23.     BREWER put his left hand on the front portion of the firearm while still holding the firearm in his right hand.

24.     At all times, however, BREWER continued to point the firearm at the ground.

25.     As such, BREWER'S right hand was located at approximate stomach level, and his left hand was located lower at approximate pelvis level.

26.     BREWER'S hope was that the occupants of the vehicles would see that he was carrying a firearm – albeit in a non-firing stance – and leave him alone.

27.     BREWER was very careful to not point the firearm in the direction of the fast-approaching vehicles because BREWER wanted to prevent a confrontation, not cause one.

28.     BREWER'S hope was to be left alone and to continue peacefully and safely with his walk.

29.     While the vehicles were still moving towards BREWER, he saw doors on the vehicles open.

30.     When the vehicles stopped, a man on the passenger side of the car, who BREWER believes to be TALLEY, pointed a gun at BREWER, and BREWER heard someone yell to drop the firearm.

3

31.     Terrified, BREWER turned away from the vehicles and people, and began to run away from the people and towards his aunt's home, which was only a short distance away.

32.     BREWER heard what he soon discovered to be gunshots.

33.     BREWER dropped the firearm and his bookbag and kept running.

34.     BREWER felt pain in his back and his left arm and realized that he had been shot multiple times.

35.     BREWER ran into his aunt's home and then outside to the carport where he collapsed.

### B. BREWER Suffered Life-Threatening Injuries

36.     As a result of being shot, BREWER received life-threatening injuries, some of which are permanent and disabling.

37.     BREWER was transported by ambulance to Helena Regional Medical Center.

38.     As a result of being shot, BREWER suffered several penetrating wounds: left lateral upper back, left anterior axilla/proximal shoulder, and left dorsal wrist.

39.     BREWER'S injuries included displaced comminuted fractures to his left ulna and radius (Left Wrist), and injuries to his axillary artery and vein which were both completely transected (Left Shoulder).

40.     As a result of his injuries, BREWER suffered hypovolemic shock and acute respiratory failure.

41.     BREWER became encephalopathic with a declining Glasgow Coma Scale and hypotension.

42.    Pursuant to FED.R.CIV.P. 11(b)(3), it is believed that the following "factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery":

    a.    BREWER suffered a hypoxic brain injury.

43.    BREWER was intubated, provided with blood products, stabilized, and flown to Regional One Health.

44.    On March 3, 2022, BREWER underwent emergency vascular surgery to repair the damage to his axillary artery.

45.    Surgeons performed a bypass graft of the axillary artery, and the axillary vein was ligated.

46.    On March 7, 2022, BREWER underwent another surgery – an open reduction internal fixation of his left ulna and radius – and the removal of bullet fragments.

47.    BREWER remained hospitalized at Regional One Health, where he received regular wound care, and was discharged on March 8, 2022.

### C. **TALLEY'S Admissions Are Inconsistent With The Physical Evidence**

48.    After TALLEY had the benefit of both time and legal counsel, TALLEY provided a verbal recorded statement in which he admitted that the first volley of shots that he fired in rapid succession had no apparent effect on BREWER.

49.    TALLEY admitted that BREWER "turns" and "runs away with the rifle," and that he (TALLEY) then "fired two more rounds a little slower."

50.    Consistent with TALLEY'S admissions, a body camera recorded BREWER running away from TALLEY when the second volley of bullets were fired by TALLEY.

51.    The video shows TALLEY sitting in the passenger seat of a vehicle, in a shooting position, using the A-Post of the vehicle for cover.

52.    The video shows TALLEY firing the final three bullets, at a significantly slower rate, at BREWER (who had discarded his bag and gun), as BREWER was running away from TALLEY.





*A video of the use of force can be viewed using the following link: https://youtu.be/CSuB9uztkg4*

53.    TALLEY further stated, "he reshoulders and that's when I started shooting at him."

54.    TALLEY'S statement, however, is inconsistent with the physical evidence because the gun in question could not be "shouldered."

55.    TALLEY admitted as much in his statement when he stated, "The gun has no butt-stock, so it's technically a pistol."

56.    A picture of the left side of the gun that BREWER was holding shows where the gun was struck by a bullet.

57.    Based on how the gun metal is bent, the only reasonable conclusion is that the bullet's trajectory was from the pistol grip end of the gun towards the barrel end of the gun.



58.    This means that when TALLEY fired the bullet, BREWER'S gun was pointing *away* from TALLEY, not at TALLEY.

### D.  TALLEY'S History of Reckless and/or Unlawful Conduct

59.    Prior to shooting BREWER, the CITY knew that TALLEY had a history of engaging in reckless conduct, with a cowboy mentality, while acting on its behalf in his capacity as a sworn law enforcement officer:

a.    On May 2, 2017, while recklessly operating a CITY patrol vehicle, TALLEY ran a stop sign and caused a motor vehicle accident injuring three people – leaving one of the injured a quadriplegic.

*Link to Related News Story: https://neareport.com/2019/05/21/officer-ran-stop-sign-crashing-into-and-crippling-woman-lawsuit/*

b.      On June 10, 2017, TALLEY was recorded engaging in reckless conduct and using excessive force when he needlessly drug a passively resisting female out of a vehicle *that was not in park* during a traffic stop.

*A video of the use of force can be viewed using the following link: https://youtu.be/Cw67STT0MFs*

c.      On June 5, 2019, TALLEY was involved in a deadly force incident.

d.      On July 18, 2021, TALLEY was recorded using excessive force – a TASER – against an individual who he knew was not resisting.

*A video of the use of force can be viewed using the following link: https://youtu.be/Gz4f8ujShi0*

## E. <u>CITY'S Policies and Practices Caused BREWER'S Constitutional Injury</u>

60.     TALLEY acted in the course and scope of his employment.

61.     TALLEY acted in his capacity as a sworn law enforcement officer, and thus, under color of state law.

62.     TALLEY acted pursuant to the CITY'S policies and procedures.

63.     TALLEY acted pursuant to the CITY'S training.

64.     In 2016, TALLY was a member of the first class to graduate from the CITY'S in-house police academy.

65.     While TALLEY received a two-day suspension for causing the vehicle accident that caused serious and permanent injuries to others, it is believed that the CITY did not otherwise discipline or provide TALLEY with additional training.

66.     The CITY'S failure to impose meaningful discipline or additional training reinforced the CITY'S policy and practice of permitting the use of excessive force.

67.     Pursuant to FED.R.CIV.P. 11(b)(3), it is believed that the following "factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery":

a.      CITY knew that it failed to adopt, implement, and/or maintain, policies and/or training that met the standard in the industry regarding the de-escalation of incidents.

b.      CITY knew that it failed to adopt, implement, and/or maintain, policies and/or training that met the standard in the industry regarding the use of deadly force.

c.      CITY knew that their police officers were routinely required to make use of force decisions.

d.      CITY knew that their police officers routinely made incorrect use of force decisions that resulted in violations of citizens' civil rights.

e.      CITY knew that their police officers were routinely required to evaluate facts to determine whether deadly force was necessary and lawful.

f.      CITY knew that their police officers routinely incorrectly identified persons as deadly threats, which resulted in violations of citizens' civil rights.

g.      In 2013, CITY settled a civil rights excessive force lawsuit resulting from the 2011 use of force by several Jonesboro police officers.

h.      In 2015, CITY settled a civil rights excessive force/wrongful death lawsuit resulting from the 2012 use of deadly force by Jonesboro Police Officer, Nicholas Holley, against Cletis Williams.

i.      In 2018, CITY settled a civil rights excessive force/wrongful death lawsuit resulting from the 2015 use of deadly force by Jonesboro Police Officer, Heath Loggins, against Christopher Finley.

9

j.      On February 9, 2022, Jonesboro Police Officer, Corey Obregon, shot and killed 22-year-old Jayden J. Prunty

k.      The shooting resulted from a questionable stop of Obregon, who was walking at the time, to investigate the odor of marijuana.

l.      While attempting to take Prunty into custody and disarm him, Prunty's gun discharged, striking Obregon in the leg.

m.      It appears from Obregon's body camera video that he then shot Prunty in the back of the head, twice.

n.      While the first bullet fired by Obregon was arguably objectively reasonable, the second bullet fired by Obregon was not.

o.      Like the instant matter, the second bullet was not immediately fired, and was fired with forethought.

p.      Obregon was not retrained, disciplined, or criminally prosecuted.

q.      Despite it being plainly obvious to CITY as a result of direct observation, citizen complaints, and/or litigation, that additional or different policies and/or training would protect the civil rights of citizens, CITY did not provide the additional or different policies and/or training.

r.      The aforementioned policy and/or training deficiencies were the moving force that caused the injuries discussed herein.

68.     After reviewing TALLEY'S claim that BREWER had engaged in criminal conduct that required TALLEY to use deadly force against him, the prosecutor declined to file criminal charges against BREWER.

10

**F.  <u>TALLEY Cleared of Criminal Wrongdoing After Sham Investigation</u>**

69.    The Phillips County Deputy Prosecuting Attorney issued a use of force memorandum advising that TALLEY'S use of deadly force was justified and that he would not be criminally prosecuted.

70.    The prosecutor's decision, however, resulted from a sham criminal investigation.

71.    First, there is physical evidence that is material to the legal inquiry that is not discussed in the investigation report or in the prosecutor's memorandum:

      a.    The trajectory of the bullet that impacted BREWER'S gun (discussed above).

      b.    A body camera video that captured video of BREWER running away from TALLEY while TALLEY continued to fire bullets at BREWER (in the manner discussed above).

      c.    Whether BREWER fired the gun at someone (he did not), or instead was running away while holding a gun (in an open-carry jurisdiction).

      d.    BREWER'S written affidavit signed under penalty of perjury.

      e.    BREWER'S medical records discussing the location of his injuries.

72.    Second, the prosecutor stated in her use of force memorandum, "Talley fired multiple rounds, striking Brewer in the left arm and chest area."

73.    Brewer, however, was not shot in the chest but did suffer a bullet wound in his back near his left shoulder blade.

74.    Third, as previously stated during TALLEY'S "interview" conducted after he had the benefit of both time and counsel, TALLEY stated, "he reshoulders and that's when I started shooting at him."

75.    TALLEY'S statement was inconsistent with the physical evidence because the gun in question cannot be "shouldered."

76.    This is evidenced by the construction of the gun itself, and TALLEY admitted as much when he told the investigator, "The gun has no butt-stock, so it's technically a pistol."

77.    The investigator failed to interrogate TALLEY on this point, and this point was not documented or discussed in the witness summary, incident report, or the prosecutor's memorandum.

78.    Fourth, during TALLEY'S "interview" conducted after he had the benefit of both time and counsel, TALLEY stated,

> fired several rounds very very quickly, uhm, t'what I considered no avail, I was like, I didn't, wasn't getting any feedback from him. He turns with the rifle, tshhhh uhm runs away with the rifle, I fired two more rounds a little slower, and I stopped, uh, Josh said, "hell he dropped the gun," we gave chase, I ran to the residence on the right side of the street, didn't see him.

79.    Notably, TALLEY admits that the first volley of shots fired in rapid succession had no apparent effect on BREWER.

80.    As discussed above, TALLEY admits that BREWER "turns" and "runs away with the rifle," and that he then "fired two more rounds a little slower."

81.    The investigator failed to interrogate TALLEY regarding why he shot at a fleeing suspect.

82.    The fact that TALLEY admitted that he shot at a fleeing suspect was not documented or discussed in the witness summary, incident report, or the prosecutor's memorandum. *See Tennessee v. Garner*, 471 U.S. 1 (1985) (a police officer may use deadly force to prevent the escape of a fleeing suspect only if the officer has a good-faith belief that the suspect poses a significant threat of death or serious physical injury to the officer or others.)

83.    The presumption is that a criminal investigation into a police-involved shooting would be taken seriously, and that only the most qualified and experienced investigator would be assigned to conduct the investigation.

84.    As such, the significant deficiencies in the criminal investigation evidence either complete incompetence or an intention to undermine a criminal investigation.


## IV.    LEGAL CLAIMS[1]

### COUNT I

**Plaintiff BREWER v. Defendant TALLEY**
**Fourth Amendment (Excessive Force)**
**Pursuant to 42 U.S.C. § 1983**

85.    Paragraphs 1-84 are incorporated herein by reference.

86.    42 U.S.C. § 1983 authorizes lawsuits against law enforcement officers who violate constitutional rights while acting under color of state law.

87.    "The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures." *Coker v. Arkansas State Police,* 734 F.3d 838, 842 (8th. Cir. 2013).

88.    The objective reasonableness standard applies to determine whether a law enforcement officer has used excessive force, whether deadly or not, in the course of an arrest. *Nance v. Sammis,* 586 F.3d 604, 609-10 (8th Cir. 2009); *see also Kingsley v. Hendrickson,* 576 U.S. 389 (2015); *Brown v. City of Golden Valley,* 574 F.3d 491, 496 (8th Cir. 2009).

---

[1] In a Complaint, a Plaintiff is only required to plead facts, not legal theories. *See Johnson v. City of Shelby,* 574 U.S. 10 (2014) (Per Curiam) (reversing Fifth Circuit and holding that only facts need to be pled in a complaint, not legal theories). Plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569-70 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P 8(a)(2). "Each allegation must be simple, concise, and direct. No technical form is required." FED.R.CIV.P. 8(d)(1).

89.     To succeed on a claim for excessive force, a Plaintiff must establish that: (1) Defendant used force on Plaintiff; (2) Defendant's use of force was unreasonable in the light of the facts and circumstances at the time; (3) Defendant knew that using force presented a risk of harm to Plaintiff, but Defendant recklessly disregarded Plaintiff's safety by failing to take reasonable measures to minimize the risk of harm to Plaintiff; and (4) Defendant's conduct caused some harm to Plaintiff. Kingsley, 576 U.S. 389, 393.

90.     TALLEY used physical force against BREWER by firing bullets at him with the intent of causing serious injury or death.

91.     The bullets fired by TALLEY entered BREWER'S body causing life-threatening injuries.

92.     When TALLEY used force against BREWER, BREWER did not present as a significant or deadly threat to anyone.

93.     TALLEY used force that was not objectively reasonable.

94.     The force used was excessive, unlawful, and used solely for the purpose of causing physical pain, injury, and/or death.

95.     As a direct and proximate result of TALLEY'S conduct, BREWER suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, life-threatening injuries, and permanent and disabling injuries.

96.     As a direct and proximate result of TALLEY'S conduct, BREWER has and will incur attorneys' fees and litigation costs.

## COUNT II

### Plaintiff BREWER v. Defendant CITY
### Fourth and Fourteenth Amendments—Monell Liability
### Pursuant to 42 U.S.C. § 1983

97.    Paragraphs 1-84 are incorporated herein by reference.

98.    "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

99.    During all relevant times, TALLEY acted pursuant to the policies and procedures of CITY.

100.    The identified policies of CITY were the moving force that caused BREWER'S constitutional injury.

101.    As a direct and proximate result of the CITY'S conduct, BREWER suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, life-threatening injuries, and permanent and disabling injuries.

102.    As a direct and proximate result of the CITY'S conduct, BREWER has and will incur attorneys' fees and litigation costs.

## COUNT III

### Plaintiff BREWER v. Defendants
### Violation of The Arkansas Civil Rights Act
### (Arkansas Code § 16-123-105)

117.    Paragraphs 1-84 are incorporated herein by reference.

118.    The Arkansas Civil Rights Act provides, *"Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions*

*subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress."*

119.    The Defendants' conduct constitutes a violation of the Arkansas Civil Rights Act of 1993 for the same reasons the Defendants' conduct violates 42 U.S.C. § 1983.

120.    As a direct and proximate result of TALLEY and CITY'S conduct, BREWER suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, life-threatening injuries, and permanent and disabling injuries.

121.    As a direct and proximate result of TALLEY and CITY'S conduct, BREWER has and will incur attorneys' fees and litigation costs.

## COUNT IV

### Plaintiff BREWER v. Defendant TALLEY
### Assault
### (Arkansas State Law)

122.    Paragraphs 1-84 are incorporated herein by reference.

123.    During all relevant times, TALLEY was an employee of CITY acting in the course and scope of his employment.

124.    TALLEY acted in such a manner as to create a reasonable apprehension of immediate harmful or offensive contact upon the person of BREWER.

125.    While BREWER was unarmed and running away from TALLEY, TALLEY fired bullets from a gun at BREWER without a legal justification to do so.

126.    TALLEY intended to cause BREWER to be in fear of serious injury or death.

127.    TALLEY'S actions placed BREWER in fear of serious injury or death.

128.    As a direct and proximate result of TALLEY'S conduct, BREWER suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, life-threatening injuries, and permanent and disabling injuries.

129.    As a direct and proximate result of TALLEY'S conduct, BREWER has and will incur attorneys' fees and litigation costs.

## COUNT V

### Plaintiff BREWER v. Defendant TALLEY
### BATTERY
### (Arkansas State Law)

130.    Paragraphs 1-84 are incorporated herein by reference.

131.    During all relevant times, TALLEY was an employee of CITY acting in the course and scope of his employment.

132.    TALLEY acted with the intent to cause harmful or offensive contact with BREWER.

133.    TALLEY acted with the intent to create the apprehension of harmful or offensive contact with BREWER.

134.    While BREWER was unarmed and running away from TALLEY, TALLEY fired bullets from a gun at BREWER without a legal justification to do so.

135.    TALLEY caused harmful and offensive contact with BREWER that caused BREWER to suffer serious injuries.

136.    TALLEY fired bullets into BREWER'S body causing serious injury.

137.    As a direct and proximate result of TALLEY'S conduct, BREWER suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, life-threatening injuries, and permanent and disabling injuries.

17

138.     As a direct and proximate result of TALLEY'S conduct, BREWER has and will incur attorneys' fees and litigation costs.

## COUNT VI

**Plaintiff BREWER v. Defendants TALLEY and CITY**
**Negligence**
**(Arkansas State Law)**

139.     Paragraphs 1-84 are incorporated herein by reference.

140.     During all relevant times, TALLEY was an employee of CITY acting in the course and scope of his employment.

141.     TALLEY had a legal duty to use ordinary care for the safety of BREWER.

142.     TALLEY negligently failed to act in accordance with CITY policies, law enforcement training, and state law.

143.     TALLEY'S negligent conduct caused BREWER to suffer serious injuries and damages.

144.     As a direct and proximate result of TALLEY and CITY'S conduct, BREWER suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, life-threatening injuries, and permanent and disabling injuries.

145.     As a direct and proximate result of TALLEY and CITY'S conduct, BREWER has and will incur attorneys' fees and litigation costs.

## COUNT VII

**Plaintiff BREWER v. Defendant TALLEY**
**Outrage**
**(Arkansas State Law)**

146.     Paragraphs 1-84 are incorporated herein by reference.

147.    During all relevant times, TALLEY was an employee of CITY acting in the course and scope of his employment.

148.    TALLEY willfully and wantonly engaged in extreme and outrageous conduct.

149.    TALLEY'S conduct is the proximate cause of BREWER'S emotional distress.

150.    As a direct and proximate result of TALLEY'S conduct, BREWER suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, life-threatening injuries, and permanent and disabling injuries.

151.    As a direct and proximate result of TALLEY'S conduct, BREWER has and will incur attorneys' fees and litigation costs.

## COUNT VIII

### Plaintiff BREWER v. Defendant CITY
### Direct and Vicarious Liability
### (Arkansas State Law)

152.    Paragraphs 1-84 are incorporated herein by reference.

153.    During all relevant times, TALLEY was an employee of CITY acting in the course and scope of his employment.

154.    CITY knew, or in the exercise of reasonable care should have known, that TALLEY subjected others to an unreasonable risk of harm.

155.    CITY was negligent in supervising TALLEY.

156.    Prior to this incident, CITY should have retrained and/or terminated TALLEY'S employment.

157.    CITY'S negligence in supervising TALLEY was a proximate cause of BREWER'S serious injuries and damages.

158.    As such, the CITY is vicariously liable for TALLEY'S negligent and tortious conduct.

159.    As a direct and proximate result of the CITY'S conduct, BREWER suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, life-threatening injuries, and permanent and disabling injuries.

160.    As a direct and proximate result of the CITY'S conduct, BREWER has and will incur attorneys' fees and litigation costs.

## V.    **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff BREWER respectfully requests that judgment be entered in his favor as follows:

A.    **Declaratory Judgment:** Providing that the Defendants, TALLEY and CITY'S individual and collective conduct violated BREWER'S state and federal rights;

B.    **Compensatory Damages:** Including, but not limited to, the monetary value associated with the following: violations of legal rights, emotional distress, emotional injury, embarrassment, mental anguish, pain and suffering, physical injury, scarring, and permanent disability;

C.    **Punitive damages** as permitted by law;

D.    **Equitable Relief:** An admission of the allegations stated in the Complaint, in writing, and an oral and written apology for same, in person, from Defendants TALLEY and CITY;

E.    **Attorney's Fees and Costs**; and

F.    **Discretionary Damages and Relief:** Such other financial or equitable relief that the Court deems reasonable and just.

## VI.    <u>JURY TRIAL DEMAND</u>

BREWER respectfully demands a trial by jury on all claims/issues in this matter that may

be tried to a jury.


**Respectfully Submitted,**


*Devon M. Jacob*                                          Date: March 1, 2024
**DEVON M. JACOB, ESQUIRE**
Bar Number: PA89182
Attorney for Plaintiff
**JACOB LITIGATION, INC.**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
Telephone: (717) 796-7733
Email: djacob@jacoblitigation.com


**VEN JOHNSON, ESQUIRE**                                  Date: March 1, 2024
Bar Number: MI P39219
Attorney for Plaintiff
**VEN JOHNSON LAW, PLC**
535 Griswold Street, Suite 2600, Detroit, Michigan 48226
Telephone: (888) 753-1043
Email: vjohnson@venjohnsonlaw.com